United States District Court
For the Northern District of California

1
2
3
4
5                          UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8    WISTRON CORPORATION, *et al.*,            No. C-10-4458 EMC

9                    Plaintiffs,

10          v.                                 **ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANTS'
11   PHILLIP M. ADAMS & ASSOCIATES,            MOTION TO DISMISS**
     LLC, *et al.*,
12                                             **(Docket No. 12)**
                     Defendants.
13
     _____/
14

15

16          Plaintiffs Wistron Corporation, Wistron Infocomm Corporation, Wistron Infocomm

17   Technology, AOpen Incorporated, and AOpen America Incorporated (collectively "Plaintiffs")

18   initiated this lawsuit against Defendants Phillip M. Adams & Associates, LLC ("PMAA"), AFTG-

19   TG LLC ("AFTG"), and Phillip M. Adams (collectively referred to as "Defendants") seeking: (1) a

20   declaratory judgment that Plaintiffs are not infringing patents[1] invented by Dr. Adams and owned by

21   PMAA ("the PMAA patents") (First Amended Complaint ("FAC") at 12:1-2), (2) a declaratory

22   judgment that they are not infringing the patents[2] ("the AFTG patents") invented by Dr. Adams and

23   now owned by ATFG (FAC at 12:1-2), and (3) a declaratory judgment that these patents-in-suit are

24   invalid and unenforceable, and (4) an injunction to restrain Defendants from suing or threatening

25   suit against Plaintiffs for infringement.  FAC at 12:12-16.

26

27

28
     _____

            [1] United States Patent Nos. 5,379,414; 5,983,002; 6,195,767; 6,401,222; 6,687,858;
     7,251,752; 7,069,475; and 7,409,601

            [2] United States Patent Nos. 6,691,181; 7,249,203; 6,842,802; 7,366,804; and 7,653,766.

**United States District Court**
For the Northern District of California

Pending before the Court is Defendants' motion to dismiss the First Amended Complaint or in the alternative to transfer this case to the District of Wyoming.  Having considered the parties' briefs and accompanying submissions, as well as the oral arguments of counsel, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss or transfer.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Wistron Corporation ("Wistron Corp.") is a Taiwan corporation "in the business of designing, developing and manufacturing computer products such as notebook computers . . . under their own brand name," and selling these products throughout the United States.  FAC ¶ 2.  Plaintiff Wistron Infocomm (Texas) Corporation is a Texas corporation, a wholly-owned subsidiary of Wistron Corp., and provides "after-sales repair and servicing of products for which Wistron Corp. was the original manufacturer."  FAC ¶ 3.  Plaintiff Wistron Infocomm Technology (America) Corporation is also a Texas corporation, a wholly-owned subsidiary of Wistron Corp., and provides sales support to customers in North America.  FAC ¶ 4.

AOpen Incorporated is a Taiwan corporation that sells and manufactures computer products throughout the United States.  FAC ¶ 5.  Plaintiff AOpen America Incorporated ("AOpen America") is a California corporation and wholly-owned subsidiary of AOpen Inc.  FAC ¶ 6.  AOpen America manufactures ultra small-form-factor (uSFF) computer components and customizable platforms, and provides a digital signage solution.  *Id.*

Defendant Dr. Phillip Adams, a Wyoming resident, is the owner and head of the defendant companies PMAA and AFTG, which function only as patent holding companies for him.  FAC ¶¶ 7-9.  Dr. Adams assigned ownership of the patents-in-issue to either PMMA or AFTG.  *Id.* at ¶¶ 10-11.

In their First Amended Complaint, Plaintiffs allege as follows.  On June 22, 2010, Defendants sent letters to Wistron and AOpen[3] stating that Defendants would embark on a patent infringement lawsuit.  FAC ¶ 18; *see also* Mot. to Dismiss at 11.  The purpose of these letters, Plaintiffs aver, was to disrupt the sales of Wistron and AOpen products, such as notebook

---

[3] The Complaint defines all the Wistron companies collectively as "Wistron" and the AOpen companies collectively as "AOpen."

computers. *Id.* Defendants demanded that Wistron and AOpen enter into royalty-bearing licenses for the PMAA and AFTG patents. *Id.* If the Plaintiffs did not, Defendants threatened that they would be subjected to substantial liabilities. *Id.* at ¶ 19. On or around August 20, 2010, Defendants sent letters to Wistron and AOpen alleging that both companies manufactured infringing products, and that Wistron and AOpen were independently liable for the infringement of the PMAA and AFTG patents. *Id.* at 21.

On October 1, 2010, Plaintiffs filed the Complaint herein seeking a declaratory judgment of non-infringement. *See* Compl. (Docket No. 1); FAC ¶ 22. Shortly thereafter, on October 18, 2010, AFTG and PMAA filed Complaints for Patent Infringement against thirty-five defendants, including all of the Wistron and AOpen plaintiffs herein, in the United States District Court for the District of Wyoming ("the Wyoming Action"). *See* Ratinoff Decl., Exhs. 1, 34-37. In that action, Defendants alleged that the Wistron and AOpen defendants, among others, infringed each of the patents-in-suit "through, among other activities, the manufacture, use, importation, sale and/or offer for sale of computer chips, motherboards, computers and other products, as well as using infringing methods including but not limited to testing of Defendants' products as a part of the manufacturing process." FAC, Exh. A ¶ 52 ("Complaint for Patent Infringement"); Ratinoff Decl., Exh. 1 ¶ 52 (same).

Plaintiffs thereafter filed their First Amended Complaint, alleging, *inter alia*, that the PMAA and AFTG patents are either invalid or unenforceable. FAC ¶ 28 (Docket No. 6). Plaintiffs further claim that PMAA and AFTG filed the Wyoming Action not only as a retaliation of Plaintiffs' instant suit, but also as a "means of improper forum shopping and to wrongfully divest this Court of jurisdiction to hear the complete case and controversy between the parties." FAC ¶ 29. On February 23, 2011, Judge Freudenthal, presiding over the Wyoming Action, ordered that Defendants' claims against Plaintiffs be dismissed without prejudice for lack of personal jurisdiction because "there is no evidence or allegation that the infringing technologies or products actually reached Wyoming." Pls.' Statement of Recent Decision, Exh. A (Docket No. 24). The Wyoming Action was proceeded by another suit alleging infringement of some of the patents-in-suit against a number of defendants, some of whom were located in California (the "Winbond" action). *See*

United States District Court

For the Northern District of California

1    Ratinoff Decl., Exh 1. (complaint in Wyoming Action referencing the Winbond action); Ratinoff

2    Decl., Exhs. 26 (describing lawsuits including Winbond litigation); 16-24 (website excerpts

3    indicating that companies sued are California corporations)).

4         On April 6, 2011 this Court held a hearing on the pending motion to dismiss or transfer this

5    action.

6                                    **II.   DISCUSSION**

7         In their motion to dismiss, Defendants allege that this Court lacks personal jurisdiction over

8    them, such that the suit must be dismissed pursuant to Rule 12(b)(2).[4]  Second, Defendants argue

9    that the suit should be dismissed for failure to state a claim upon which relief can be granted under

10   Rule 12(b)(6) because Plaintiffs' Complaint "tenders only naked assertions completely devoid of

11   further factual enhancement." Mot. to Dismiss at 18.  Finally, Defendants seek dismissal for failure

12   to join a required party under Rule 19(a).  Each of these arguments is addressed herein.

13   A.   Motion to Dismiss for Lack of Personal Jurisdiction

14        Defendants move to dismiss the First Amended Complaint based on a lack of personal

15   jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  Plaintiff bears the burden of making a prima facie

16   showing of general or specific jurisdiction over each and every defendant it has sued.  *See Calder v.*

17   *Jones*, 465 U.S. 783, 790 (1984); *Data Disc, Inc. v. Sys. Tech. Associates, Inc.,* 557 F. 2d 1280, 1285

18   (9th Cir. 1977) ("[T]he party seeking to invoke the jurisdiction of the federal court has the burden of

19   establishing that jurisdiction exists. . . . [Absent a material dispute as to jurisdictional facts,] "a

20   ─────────────────────

21        [4] Defendants purport to bring, *inter alia*, a "Motion to Dismiss for Lack of Subject Matter
     Jurisdiction" pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See* Mot. to Dismiss at iv (Table
22   of Contents).  In fact, Defendants concede that the Court has subject matter jurisdiction.  *See* Joint
     Case Mgmt. Statement at 7:7-9 (Docket No. 27), and make no such argument in the body of their
23   brief.  To the extent Defendants make an argument with respect to subject matter jurisdiction, it is
     limited to their alternative argument that the Court should decline to apply the "first-to-file" rule and
24   should transfer this action to Wyoming.  Mot. to Dismiss at 14-16 ("Motion to Transfer").  In light
     of Judge Freudenthal's dismissal order, however, Defendants conceded at the hearing herein that
25   such a transfer no longer makes sense, and effectively withdrew their transfer request.  The Court
     finds that it has subject matter jurisdiction over Plaintiffs' claim for declaratory relief pursuant to 28
26   U.S.C. §§ 1331, 1338(a) and the Federal Judgment Act, 28 U.S.C. §§ 2201, 2202 based upon
     Plaintiffs' allegations of Defendants' threatened (and now actualized) infringement action.  *See* FAC
27   ¶¶ 14, 19, 21.  *See generally Fina Research, SA v. Baroid, Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir.
     1998) (requiring party seeking declaratory relief to establish a reasonable apprehension of litigation
28   based on an "explicit threat or other action by the patentee").

United States District Court

For the Northern District of California

plaintiff must make only a prima facie showing of jurisdictional facts through submitted materials in order to avoid [dismissal].").  Where "a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Data Disc*, 557 F. 2d at 1285 (citations omitted); *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).[5]  In determining whether Plaintiffs have made a prima facie showing of personal jurisdiction, the Court construes the pleadings and affidavit in the light most favorable to Plaintiff.  *Graphic Controls Corp. v. Utah Med. Prods., Inc*., 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998).

In deciding whether the Court has jurisdiction over an out-of-state defendant, the Court looks to Federal Circuit precedent.  *See Breckenridge Pharms., Inc. v. Metabolife Labs., Inc*., 444 F.3d 1356, 1363 (Fed. Cir. 2006) (citing *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003)); *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Foundation,* 297 F.3d 1343, 1348 (Fed. Cir. 2002) ("Federal Circuit law governs the issue of personal jurisdiction in patent-related cases."); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc*., 148 F.3d 1355, 1358 (Fed. Cir. 1998).  The analysis set forth in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-77 (1985) is at the heart of the personal jurisdiction analysis applied in both the Ninth Circuit and the Federal Circuit, and both Circuits apply the same three-part test when applying the minimum contacts standard set forth by the Supreme Court.  *See, e.g., Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed.Cir.1995).  As such, district courts have cited both Ninth Circuit and Federal Circuit precedent with respect to personal jurisdiction.  *See, e.g., McKenzie v. Hero Indus*., 2009 U.S. Dist. LEXIS 67932, 7-8 (D. Ariz. July 29, 2009) (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc*.,

---

[5] If important jurisdictional facts are contested, the Court may permit discovery to aid the jurisdictional determination or hold a preliminary hearing to resolve contested issues.  *Data Disc*, 557 F. 2d at 1285 (noting that a plaintiff "put to his full proof . . . must establish the jurisdictional facts by a preponderance of the evidence").  Although some jurisdictional facts are contested here, neither party has requested a separate hearing to resolve the dispute, and the Court declines to order one *sua sponte*.  As explained herein, the Court finds the pleadings and papers to be a sufficient basis to rule on jurisdiction.  In so finding, the Court assumes that the pleadings and moving papers *sub judice* comply with Federal Rule 11(b)(3).

United States District Court

For the Northern District of California

223 F.3d 1082, 1087 (9th Cir. 2000)).  Nonetheless, the Court relies primarily on Federal Circuit precedent herein.

In analyzing personal jurisdiction, the court engages in a two-step inquiry:  (1) whether the state's long-arm statute extends to this defendant; and (2) whether the assertion of personal jurisdiction would violate due process.  *Deprenyl Animal Health,* 297 F.3d at 1348; *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1359 (Fed. Cir. 2001).  "Because California's long-arm jurisdictional statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process."  *Inamed*, 249 F.3d at 1360.  The focus here is thus on due process.

For a court to exercise personal jurisdiction over a nonresident defendant, due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Company v. Washington,* 326 U.S. 310, 316 (1945); *see also* Cal. Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or the United States.").  The requisite contacts are present "where the defendant 'deliberately' has engaged in significant activities within a state . . . or has created 'continuing obligations' between himself and residents of the forum."  *Burger King Corp.*, 471 U.S. at 475-76 (quoting *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 (1984), and *Travelers Health Ass'n v. Virginia*, 399 U.S. 643, 648 (1950)) (internal citations omitted).  Personal jurisdiction may be exercised where the defendant "deliberately has engaged in significant activities within the State, or has *created continuing obligations between himself and residents of the forum,* [because] he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws."  *Akro Corp. v. Luker*, 45 F. 3d at 1545 (emphasis in original) (quoting *Burger King*, 471 U.S. at 476).  Mere random, fortuitous, or attenuated connections with the forum state, however, fall short of the minimum contacts threshold.  *Burger King*, 471 U.S. at 475.

**United States District Court**
For the Northern District of California

There are two forms of personal jurisdiction: general jurisdiction and specific jurisdiction. *See Deprenyl Animal Health*, 297 F.3d at 1350 (observing that general jurisdiction arises only when a defendant maintains "continuous and systematic contacts with the forum state"). Plaintiffs do not argue that the Court has general jurisdiction over Defendants. Instead, Plaintiffs contend that specific jurisdiction over Defendants exists by virtue of their patent-related activities in California. Opp'n at 1. The Court accordingly turns to an analysis of specific jurisdiction.

Specific jurisdiction exists where the cause of action arises out of or relates to a defendant's contacts with the forum state, even if those contacts are isolated and sporadic. *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005). The Court considers three factors in determining whether the exercise of specific personal jurisdiction over an out-of-state defendant comports with due process: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities in the forum; and (3) whether the exercise of jurisdiction is "reasonable and fair." *Deprenyl Animal Health*, 297 F.3d at 1351. *See also Akro Corp.*, 45 F. 3d at 1545-46 (finding specific jurisdiction over a nonresident patent holder based substantially upon correspondence between the parties); *Breckenridge Pharms., Inc. v. Metabolife Labs., Inc*., 444 F.3d 1356, 1363 (Fed. Cir. 2006); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) ("The first prong is satisfied by either purposeful availment or purposeful direction . . . ."). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. at 477); *Breckenridge*, 444 F.3d at 1363. "[J]urisdiction may not be avoided merely because the defendant did not *physically* enter the forum state." *Burger King*, 471 U.S. at 476 (emphasis in original) (finding personal jurisdiction where the defendant franchisees "reached out beyond" the borders of their state to negotiate the franchise agreement at issue). *See generally Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1343-1344 (Fed. Cir. 2008) ("All considerations

must be weighed, not in isolation, but together, in deciding whether the forum can, and should, entertain the suit.")

      1.   <u>Purposeful Direction</u>

The Court must first decide whether Defendants purposefully directed relevant activities to residents in the forum state. *Inamed Corp. v. Kuzmak,* 249 F. 3d 1356, 1360 (Fed. Cir. 2001). "A foreign act that is both aimed at and has an effect in the forum state satisfies the purposefully directed portion of the specific jurisdiction test." *McKenzie v. Hero Indus.*, 2009 U.S. Dist. LEXIS 67932, 7-8 (D. Ariz. July 29, 2009) (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). "The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum." *Avocent Huntsville,* 552 F. 3d at 1332 (internal quotations and brackets omitted).

Plaintiffs catalog a lengthy list of contacts Defendants (Dr. Adams in particular) have had with California residents, including:

      1.   Defendants' licensing agreement for a number of the patents-in-suit with HP, which is headquartered in California.  *See* Exh. 53 ¶ 6; Exh. 52 ¶ 20.  *See* Hewlett-Packard Company Corporate Headquarters, http://www8.hp.com/us/en/hp-information/about-hp/headquarters.html (last visited March 2, 2011).

      2.   Dr. Adams' consulting work for HP, for which he received $27.5 million in fees (*see* Ratinoff Decl., Exhs. 57 (LA Times Article) and 53 ¶ 6 (Declaration of Dr. Adams describing his "limited correspondence" with HP and Compaq: "whenever there was an issue about the technology, I would fly to HP and Compaq to resolve those issues or have telephone conferences with their technical people")),

      3.   Defendants' enforcement of their patents  and HP license agreement in sending warning letters to Wistron and AOpen and suing AOpen America, a California corporation in the Wyoming Action (*see* FAC ¶ 18; Ratinoff Decl., Exh. 1),

United States District Court

For the Northern District of California

4. Defendants' further enforcement of their patents and HP license agreement in suing various companies in both the Winbond litigation and the Wyoming Action, both of which involved numerous California corporations, for infringement of various patents owned by Defendants including the patents-in-suit (Motion to Dismiss at 1, ¶ 5,

5. Defendants' attempts to negotiate licenses of his patents with at least thirteen California-based companies prior to the Wyoming Action (*see* Ratinoff Decl., Exh. 1 ¶¶ 1, 2),

6. PMAA's May 2010 settlement agreement with California-based Sony Electronics Corporation ("Sony") providing, in part, that Sony would gain ownership of two patents-in-suit[6] (*see* Dumke Decl., ¶ 17; Ratinoff Decl., Exh. 23), and

7. Dr. Adams' *qui tam* action in the California Superior Court for the County of San Francisco related to the patents-in-suit[7] (*see* Ratinoff Decl., Exh. 52 ¶¶ 26-31 (Complaint describing *qui tam* action)).  *See* Opp'n at 1.

Additionally, the potential injury to AOpen America resulting from Defendants' enforcement activity would arguably occur in California where AOpen America is located.  *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state is "expressly aimed" at that state for purposes of this analysis); *Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062, 1067-68 (4th Cir. 1982) (under the North Carolina long-arm statute, tortious conduct

---

[6] U.S. Patent Nos. 5,379,414 and 6,195,767.

[7] Dr. Adams alleged that Hewlett-Packard and 38 other corporate defendants violated the False Claims Act by selling computers with defective floppy disk controllers to the State of California and its political subdivisions.  Ratinoff Decl., Exh. 54 (Order of Dismissal).  Dr. Adams brought this action on the advice of counsel "[i]n an effort to bring attention to the [d]efect [remedied by his patented inventions]."  Ratinoff Decl., Exh. 52 ¶ 26.  Thereafter, Dr. Adams withdrew as a relator and the State of California sought a temporary restraining order enjoining him from engaging in a license agreement with HP.  *See id.* ¶ 33.  Evidently, Dr. Adams presented his patents as a solution to the defective disk controllers.  The Court ultimately denied injunctive relief, and Dr. Adams successfully negotiated a licensing agreement with HP.  *Id.* ¶¶ 41-47.

United States District Court

For the Northern District of California

1  occurring in numerous states injures a corporate plaintiff at its principal place of business, where it

2  loses profits); *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1228 (D. Kan. 2000).

3          Defendants dispute Plaintiffs' characterization of their other contacts with this forum.  They

4  contend that their California contacts can "hardly be viewed as repeated and systematic" because,

5  *inter alia*, "Dr. Adams has not traveled to California for the purpose of doing business in nearly a

6  decade."  Reply at 1:18-24.  Defendants further claim that "it has been at least 7 years since Dr.

7  Adams or PMAA have had any contact with California," and that "AFTG has never had any

8  contacts with California."  Reply at 2:6-10.  Indeed, Defendants couch Dr. Adams' behavior and

9  policy with respect to this forum not as one of purposeful direction or purposeful availment, but of

10  purposeful *avoidance*.  *See* Reply at 4 ("Dr. Adams has purposefully avoided any engagement with

11  the State of California since acting as a relator in 1998" and "[i]t has been nearly 10 years since Dr.

12  Adams, or his entities, conducted any business in California, including any trip to assist HP" such

13  that he has shed the "taint" of this jurisdiction "over the last decade of intentional avoidance.").

14          As Defendants contend, merely sending cease-and-desist letters in the absence of physical

15  presence in the forum, "without more," does not establish personal jurisdiction.  *See* Mot. to Dismiss

16  at 6 (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc*., 148 F.3d 1355, 1360-61 (Fed. Cir.

17  1998) ("A patentee should not subject itself to personal jurisdiction in a forum solely by informing a

18  party who happens to be located there of suspected infringement.")).  *See Breckenridge,* 444 F. 3d

19  1356, 1366 (Fed. Cir. 2006) ("[T]he crux of the due process inquiry should focus first on whether

20  the defendant has had contact with parties in the forum state beyond the sending of cease and desist

21  letters or mere attempts to license the patent at issue.").  *Accord Hildebrand v. Steck Mfg. Co.*, 279

22  F.3d 1351, 1356 (Fed. Cir. 2002); *Inamed*, 249 F.3d at 1361.  But Plaintiffs have identified

23  something "more" than sending a warning letter.  They point to "Defendants' licensing of at-issue

24  patents to entities in California with an obligation to enforce the patents."  Opp'n at 9 (citing *Akro*,

25  45 F.3d at 1548-49).  The California contacts described above evidence that enforcement effort.

26  Relying on *Akro*, Plaintiffs argue that Defendants' systematic enforcement of these patents pursuant

27

28

United States District Court

For the Northern District of California

1    to its licensing obligation with a California company against an alleged California infringer satisfies

2    the purposeful direction prong here.[8]  Opp'n at 9-10.  The Court agrees.

3        In *Akro*, the plaintiff sought a declaratory judgment in Ohio against patent holder Luker, who

4    was a California resident.  Luker's Ohio contacts, as described by Akro based upon Luker's letters,

5    included (1) an initial accusatory letter sent to the plaintiff in Ohio followed by letters to the

6    plaintiff's counsel in another state, and (2) an exclusive license to the plaintiff's competitor in the

7    floor-mat business, Pretty Products, also located in Ohio.  *Akro*, 45 F.3d at 1546.  The district court

8    concluded that the warning letters "were, for purposes of our due process inquiry, directed to Akro

9    in Ohio."  *Id*. at 1546.  The letters also explained that, pursuant to its license agreement with Pretty

10   Products, Luker was obligated to defend against any infringement of the patent, and Pretty Products

11   was empowered to sue infringing parties on Luker's behalf.  *Id*. at 1543.  The district court found

12   these contacts to be sufficient to confer specific personal jurisdiction upon the court.  The Federal

13   Circuit agreed, reasoning that "the plaintiff need not be the forum resident toward whom any, much

14   less all, of the defendant's relevant activities were purposefully directed."  *Id*. at 1547 (citing *Calder*

15   *v. Jones*, 465 U.S. 783 (1984); *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770 (1984)).  The Court

16   explained that "[b]ecause Luker purposefully directed activities regarding the [patent] toward

17   residents of Ohio, those activities are related to Akro's cause of action, and Luker failed to

18   demonstrate that jurisdiction over him would be unconstitutionally unreasonable."  *Id*. at 1549.

19       In the case at bar, Plaintiff AOpen America, a California corporation, allegedly received

20   Defendants' warning letters in California and was in fact sued in Defendants' Wyoming Action.

21   Although Defendants state they never sent a warning letter to AOpen America (only to its parent

22   corporation), Defendants did file the Wyoming Action naming AOpen America as a defendant.  *See*

---

24   [8] Plaintiffs contend, and Defendants do not dispute, that "the jurisdictional contacts of one
[defendant] are the jurisdictional contacts of the others" here because AFTG and PMAA "function

25   as patent holding companies and nothing more than the alter egos of Dr. Adams."  Opp'n at 9 n.7
(citing *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998) (finding

26   personal jurisdiction over an alter ego created to hold patents) and *Harris Rutsky & Co. Ins. Servs. v.
Bell & Clements, Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2002) (holding that an alter ego's contacts may

27   be imputed to its parent corporation); FAC ¶¶ 7-9.  Notably, Dr. Adams manages AFTG and PMAA,
and "[t]hese entities are the current owners of many of Dr. Adams' patents and the means by which

28   Dr. Adams does business."  Reply at 1:7-15 (Docket No. 23).

**United States District Court**
For the Northern District of California

1    Ratinoff Decl., Exh. 1 ("Complaint for Patent Infringement" naming both AOpen, Inc. and AOpen

2    America as defendants in *AFTG-TG, LLC v. Gigabyte Tech. Co. Ltd.*, *et al.*, No. 10-cv-0228 (D.

3    Wyo. 2010)).  By suing AOpen America, Defendants directed activity toward a resident of this state.

4    In contrast to a warning letter which creates a reasonable apprehension of litigation, the Wyoming

5    Action presented the *actuality* of litigation for AOpen America.

6            More importantly, like Luker, Defendants have incurred an obligation to enforce at least

7    some of the patents-in-suit pursuant licensing agreements with Hewlett-Packard Company ("HP"), a

8    California corporation.  Defendants concede in their moving papers that the terms of an agreement

9    with HP "forced" PMAA "to file suit against numerous companies in the computer industry for . . .

10   infringement of patented technology owned by PMA[A] . . . ."  Mot. to Dismiss at 1, ¶ 5.  Likewise,

11   the complaints in the Wyoming Action state:  "In May of 2005, in compliance with the terms of the

12   Hewlett Packard and Compaq license agreements, Adams was forced to file suit against numerous

13   companies in the computer industry for the theft of trade secrets and infringement of patented

14   technology owned by Adams (the 'Winbond Litigation')."  FAC, Exh. A ¶ 8.  The Wyoming

15   complaint alleges that the infringement by Plaintiffs herein was occasioned by the Plaintiffs'

16   knowing incorporation into their products infringing chips that were the subject of the prior

17   Winbond litigation which, as noted above, also involved some California defendants.  FAC, Exh. A

18   ¶ 9.  At the April 6, 2011 hearing, Defendants conceded that the Wyoming Action against Plaintiffs

19   was brought, at least in part, pursuant to Defendants' obligations under its license agreements with

20   HP.  Furthermore, in addition to suing Plaintiffs herein, Dr. Adams filed suits alleging infringement

21   of several of the patents-in-suit against other California-based computer companies.

22           Plaintiffs are correct in asserting that enforcement actions taken pursuant to a California

23   licensing agreement against California residents satisfies the first prong of personal jurisdiction

24   under *Akro* and *Breckenridge Pharms*.  *See Breckenridge Pharms*., 444 F.3d at 1366 (holding that

25   personal jurisdiction may be exercised where resident exclusive licensee and licensor agreed, *inter*

26   *alia*, to "cooperate reasonably in any enforcement action" and that licensor would "provide

27

28

United States District Court

For the Northern District of California

1    consultation" with respect to "the science, medicine and marketing of . . . related products, from

2    time to time").  This is so irrespective of Defendants' lack of physical presence in the state.

3           Pointing to *Red Wing, supra*, 148 F.3d 1355, Defendants argue that their contacts with this

4    forum are insufficient to establish personal jurisdiction.  In *Red Wing*, however, none of the

5    licensees in question resided in the forum state; they merely conducted business there.  *Red Wing*,

6    148 F.3d at 1361.  Although the patent holder received royalties for sales made in the forum state, it

7    "exercised no control over the sales activities of its licensees" and "had no dealings with its

8    licensees [in the forum state]."  *Id.* at 1358.  The licensees' business in the forum state therefore

9    amounted to "unilateral activity … not attributable to the defendant."  *Id.* (quoting *Burger King*, 471

10   U.S. at 475 n.17) (internal quotation marks omitted).  The Federal Circuit therefore concluded that

11   an exercise of personal jurisdiction over the defendant "would not comport with principles of

12   fairness."  *Id.* at 1361.

13          Unlike the licensees in *Red Wing Shoe*, at least one licensee at issue here, HP, does not

14   merely conduct business in California; it is headquartered in California.  Ratinoff Decl., ¶ 19, Exh.

15   17.  *Cf. Breckenridge*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) (noting that a defendant is subject to

16   "personal jurisdiction in the forum state if the exclusive licensee (or licensee equivalent) with which

17   it has established a relationship is not headquartered in the forum state, but nonetheless conducts

18   business there") (citation omitted).  Defendants' business dealings and license agreements go far

19   beyond the mere receipt of royalty income from California.  *Cf. Red Wing Shoe*, 148 F.3d at 1357-58

20   (noting that the licensor had no dealings with its resident licensees beyond the receipt of royalty

21   income).

22          Defendants' reliance on *Silent Drive*, *supra*, 326 F.3d 1194, is similarly misplaced.  In *Silent

23   Drive*, plaintiff Silent Drive, an Iowa corporation seeking a declaratory judgment of non-

24   infringement, raised multiple arguments in support of an exercise of jurisdiction over the defendant

25   Texas corporation in Iowa district court.  326 F.3d at 1197.  The defendant sent two letters to Silent

26   Drive, along with a copy of its patent, informing it of an injunction obtained in Texas.  *Id.* at

27   1198-99.  Besides the cease and desist letters, the defendant's only contact with Iowa was that it had

28

13

United States District Court

For the Northern District of California

1  issued a news release describing the injunction and patent and sent a copy of the news release to a

2  potential customer of Silent Drive in Iowa.  *Id*. at 1199.  Although it ultimately found jurisdiction on

3  other grounds not relevant here, the Federal Circuit concluded that an exercise of jurisdiction based

4  on the letters would offend due process because they primarily concerned an injunction obtained for

5  misappropriation of trade secrets, which was unrelated to the patent at issue.  *Id*. at 1202.

6       Unlike the letters in *Silent Drive*, Defendants' warning letters here concerned "several of Dr.

7  Adams' patents" and not an unrelated judgment.  *See*, *e.g.,* Ratinoff Decl., Exh. 27 (June 21, 2010

8  letter to Wistron Corp.).  The letters refer to patent cases litigated by Dr. Adams, and are

9  accompanied by copies of three judgments in patent cases.  *Id.*  Moreover, the complaint filed in the

10  Wyoming Action alleges infringement by Plaintiffs herein of the patents-in-suit.  Even if Dr. Adams

11  has never had an office, bank account, or employee in California, his other California contacts, most

12  notably his patent licensing with and enforcement activities against California companies, are more

13  extensive than the solitary press release in *Silent Drive*.

14       The contacts in the instant case are far more akin to those of *Akro* than *Silent Drive* or *Red*

15  *Wing*.  Like the patent holder in *Akro*, Defendants entered into a long-term contract with a California

16  entity, HP, that created an ongoing obligation to enforce the patents-in-suit.  *See* Mot. to Dismiss at

17  1, ¶ 5; FAC, Exh. A. ¶ 8; Ratinoff Decl., Exhs. 1 ¶ 8, 36 ¶ 8.  As described above, Defendants have

18  engaged in a wide range of activities directed at California residents in connection with enforcement

19  of their patents and in compliance with their California licensing obligation.  In short, Defendants

20  purposefully directed their activities to California residents.  *See Breckenridge*, 444 F.3d 1356, 1366

21  (A party may be subject to personal jurisdiction as a consequence of "its relationship with its

22  exclusive forum state licensee if the license agreement, for example, requires the defendant-licensor,

23  and grants the licensee the right, to litigate infringement claims.") (citing *Akro*, 45 F.3d at 1546).  *Cf.*

24  *Burger King*, 471 U.S. at 479 (noting the jurisdictional significance "prior negotiations and

25  contemplated future consequences, along with the terms of the contract and parties' actual course of

26  dealing"); *Juniper Networks, Inc. v. Altitude Capital Partners, L.P.*, No. 09-3449, 2010 WL

27  5141839, *6 (N.D. Cal. Dec. 13, 2010) (finding specific jurisdiction over defendant based, in part,

28

14

1    on its imputed contacts including "substantial dealings with" and assignment of many rights to the

2    patents-in-suit to a company whose principal place of business is in Berkeley, California).

3          2.    Plaintiffs' Claims Arise Out of or Relate to Defendants' Contacts With California

4          The next question this Court must answer is whether Plaintiffs' claims arise out of or are

5    sufficiently related to Defendants' forum related activities.  *See Schwarzenegger*, 374 F.3d at 802;

6    *Inamed Corp. v. Kuzmak,* 249 F.3d at 1362.  The Court finds they are.  This suit for declaratory and

7    injunctive relief was brought in anticipation of and in response to (by the time First Amended

8    Complaint was filed) Defendants' enforcement of the patents-in-suit.  That suit is part of

9    Defendants' broad and extensive enforcement of its California licensing agreement with HP directed

10   in substantial part to California residents.  For all these reasons, the instant action arises out of and is

11   related to Defendants' contacts with California.

12         3.    Fair Play and Substantial Justice

13         Even where sufficient contacts with the forum state exist to establish specific jurisdiction,

14   asserting jurisdiction may be inappropriate if it would be unfair.  *See, e.g., Patent Rights Prot. Grp.,*

15   *LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010).  However, "[w]here, as

16   here, a defendant has directed its activities at residents of the forum state, the defendant cannot

17   defeat jurisdiction based on fairness considerations unless it 'presents a compelling case that the

18   presence of some other considerations would render jurisdiction unreasonable.'"  *Juniper Networks*,

19   2010 WL 5141839 at *7 (quoting *Burger King*, 471 U.S. at 477 (brackets omitted)).  *See Inamed*

20   *Corp. v. Kuzmak,* 249 F.3d 1356, 1363 (Fed. Cir. 2001).  "This standard is met only in rare situations

21   in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so

22   attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation

23   within the forum."  *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (brackets

24   and internal quotation omitted).  In determining whether this one of those rare situations, the Court

25   considers (1) the burden on the defendant, (2) the interests of the forum state, (3) Plaintiffs' interest

26   in obtaining relief, (4) the interstate judicial system's interest in efficiently resolving controversies,

27

28

1   and (5) the shared interest of all states in furthering substantive social polities.  *See Autogenomics,*

2   *Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1025 (Fed. Cir. 2009).

3          Defendants argue that exercising jurisdiction would be unreasonable because Dr. Adams has

4   no contacts in the forum state.  Mot. to Dismiss at 9.  Second, defending a suit in California would

5   be burdensome to the Defendants because evidence related to the development of the patents is

6   found elsewhere.  Mot. to Dismiss at 9.  In response, Plaintiffs contend that the exercise of personal

7   jurisdiction in the present matter is fair and reasonable for two reasons.  First, Defendants "have

8   proven themselves financially capable of engaging in protracted negotiations and litigation with

9   California-based entities."  Opp'n at 12.  Second, California has an interest in adjudicating the

10  dispute to prevent harm to its residents.  *Id.*

11         The Court finds Defendants' arguments, which mostly reiterate arguments made with respect

12  to the first two prongs of the specific jurisdiction test, unpersuasive.  First, as discussed above,

13  Defendants have substantial contacts with California sufficient to support personal jurisdiction, and

14  there is a causal relationship between these contacts and Plaintiffs' suit.  Given Defendants'

15  extensive licensing and enforcement activities with California residents, it would not be unfair to

16  require them to litigate in this Court.  Second, it is likely that relevant evidence will be found in

17  numerous locations and will not be solely in *e.g.*, Utah or Wyoming.  Third, Defendants have made

18  no showing they are financially unable to defend themselves in this venue.  Finally, given the

19  number of California companies including AOpen America which have been subject to Defendants'

20  enforcement effort, California has an interest in adjudicating this dispute.

21         The Court finds that Defendants have failed to carry their burden of demonstrating the

22  exercise of jurisdiction would be unreasonable, and holds that exercising personal jurisdiction does

23  not violate due process under *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

24         For the above reasons, the Court **DENIES** Defendants' motion to dismiss under Rule

25  12(b)(2) for lack of personal jurisdiction.

26

27

28

16

United States District Court

For the Northern District of California

B.      Motion to Dismiss for Failure to State a Claim for Relief

Defendants also move to dismiss all claims pursuant to Rule 12(b)(6).  Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).

1.      Pleading Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim, facilitating dismissal to the extent the pleading fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The pleading is construed in the light most favorable to the non-moving party and all material allegations in it are taken to be true.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir.1986).  However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)).  Hence, the Court need not assume unstated facts, nor will it draw unwarranted inferences.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Under *Twombly,* a plaintiff (or counterclaimant) must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that

1   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2   alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is

3   not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant

4   has acted unlawfully. . . .  When a complaint pleads facts that are merely consistent with a

5   defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

6   relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted).  In sum, if the

7   facts alleged foster a reasonable inference of liability – stronger than a mere possibility – the claim

8   survives; if they do not, the claim must be dismissed.  *See Iqbal*, 129 S. Ct. at 1949-50.

9       2.   <u>Analysis</u>

10       Defendants argue that the First Amended Complaint contains "only naked assertions

11   completely devoid of further factual enhancement."  Mot. to Dismiss at 20.  They contend that

12   Plaintiffs fail to specify the grounds for their claims of patent invalidity and fail to identify the

13   products for which they seek a finding of non-infringement.  *Id.*

14       In response, Plaintiffs point out that they have identified the statutory basis for each claim of

15   invalidity.  In particular, the First Amended Complaint alleges that each patent-in-suit fails "to

16   satisfy the conditions and requirements for patentability as set forth *inter alia*, in Sections 101, 102,

17   103, and/or 112 of Title 35 of the United States Code."  FAC ¶¶ 34, 38, 42, 46, 50, 54, 58, 62, 66,

18   70, 74, 78, 82, 86.

19       Even after *Twombly* and *Iqbal*, courts have upheld such pleadings as sufficient.  *See, e.g.,*

20   *Pfizer v. Apotex, Inc.*, 726 F. Supp. 2d 921, 937-938 (N.D. Ill. 2010) (allegations that list the

21   statutory provisions are sufficient to place party on notice of claims of failure to satisfy conditions of

22   patentability and the grounds for such claims); *Elan Pharma Int'l Ltd. v. Lupon Ltd.*, 2010 WL

23   1372316, at *4 (D.N.J. March 31, 2010).

24       The Court agrees with those decisions particularly since, as Plaintiffs correctly note,

25   requiring a heightened pleading of invalidity would circumvent this Court's Patent Local Rules

26   which require detailed disclosures as to invalidity contentions soon after the suit is filed.  Opp'n at

27   24-25.  Patent L.R. 3-5 requires that in patent cases for declaratory judgment of invalidity, invalidity

28

contentions be served shortly after the defendant serves its answers or after the Initial Case

Management Conference (unless the defendant files a counterclaim for infringement in which case

the plaintiff must serve its invalidity contentions shortly after receiving the other party's

infringement contentions).  *See* Patent L.R. 3-3.  By requiring the party claiming invalidity to flesh

out and support its invalidity contentions early on, the Patent Local Rules fulfill the function of

*Twombly* and *Iqbal*.  *See Elan Pharma Int'l Ltd., supra*, 2010 WL 1372316, at \*5 (12(b)(6) motion

"suggests a factual disclosure that the Federal Circuit did not require, and a disclosure that, if

required here, would make [the district court's Patent Local Rules] superfluous.").  *See generally

Baker Hughes Oilfield Operations, Inc. v. Summerline Asset Mgmt., LLC*, 2010 Bankr. LEXIS 1582,

4-6 (Bankr. W.D. Tex. May 9, 2010) (*Twombly* is meant to "weed out frivolous litigation where

insufficient facts are alleged to form the basis for a claim," but "should not be read to raise the

pleading requirement to that of a summary judgment."); *Howard v. Whiteside,* No. 10-13, 2010 U.S.

Dist. LEXIS 36359, at \*12, \*17 (E.D. Mo. Apr. 13, 2010) (plaintiff's factual allegations sufficient to

support declaratory judgment action despite lack of detail).

Plaintiffs' claim for a declaratory judgment of noninfringement which fails to identify any

specific products is more problematic.  It is true that one purpose of the complaint is to provide

reasonably detailed notice of the claims asserted (*see Grid Systems Corp. v. Texas Instruments Inc.,

771 F. Supp. 1033, 1037 (N.D. Cal. 1991), and that here because Defendants threatened suit against

the Plaintiffs over the patents *sub judice*, we should presume that Defendants know which products

infringe.[9]  Nonetheless, without identifying the accused products, there simply is no way to

adjudicate an infringement claim.  Absent identification of the products accused of infringement,

there is no concrete case or controversy or sufficient specificity to satisfy *Twombly* and *Iqbal*.  *Cf.

MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 771 (2007) ("Basically, the question in each

case is whether the facts alleged, under all the circumstances, show that there is a substantial

controversy, between parties having adverse legal interests, of sufficient immediacy and reality to

---

[9] It bears noting that the allegations of Defendants' complaint in the Wyoming action are no
more specific than Plaintiffs' declaratory relief claim herein.  *See* FAC, Exh. A ¶¶ 9-16, 52-54;
Ratinoff Decl., Exh. 36 ¶¶ 9, 16-18.

United States District Court

For the Northern District of California

1  warrant the issuance of a declaratory judgment.") (internal quotations and citations omitted);

2  *Panavise Prods., Inc. v. Nat'l Prods., Inc*., 306 Fed. Appx. 570, 572-574 (Fed. Cir. 2009) (noting

3  that "[i]n analyzing jurisdictional questions in declaratory judgment actions, there is no bright-line

4  rule" and finding that the "mere allegation" that a product "potentially" infringes a patent falls short

5  of establishing a controversy, "when viewed under the totality of the circumstances.").  If Plaintiffs

6  are concerned about particular products, they may seek to amend the complaint and provide greater

7  specificity in seeking declaratory relief.  In addition, Defendants may well decide to file a

8  counterclaim herein and advance specific infringement claims, thereby avoiding the risk of having

9  such claims barred as compulsory counterclaims under Fed. R. Civ. P. 13(a)(1).  *See Avocent*

10 *Huntsville Corp. v. Aten Int'l Co*., 552 F.3d 1324, 1346 (Fed. Cir. 2008) (noting that patent

11 infringement claims are compulsory counterclaims in declaratory judgment actions asserting

12 invalidity); *Polymer Indus. Prod. Co. v. Bridgestone/Firestone, Inc*., 347 F.3d 935, 938 (Fed. Cir.

13 2003) (holding that patent infringement claims are compulsory counterclaims in declaratory

14 judgment actions asserting non-infringement and invalidity).

15      For these reasons, the Court finds Plaintiffs sufficiently state a claim for declaratory relief on

16 invalidity but do not state a claim for declaratory relief on infringement.  The Court therefore grants

17 in part and denies in part Defendants' Motion to Dismiss under Rule 12(b)(6).

18 C.    Motion to Dismiss for Failure to Join A Necessary Party

19      Defendants argue that Plaintiffs have failed to include a required party, Sony Electronics

20 Corporation ("Sony").  Mot. to Dismiss at 18.  According to Defendants, Sony is a necessary party

21 because ownership of two patents-in-suit[10] was transferred from Dr. Adams to Sony in Spring 2010

22 pursuant to a settlement agreement.  Mot. to Dismiss at 18; Ratinoff Decl., Exhs. 23, 25.

23      Federal Rule of Civil Procedure 19(a) requires joinder of persons whose absence would

24 preclude the grant of complete relief or whose absence would impede their ability to protect their

25 interests or would subject any of the parties to the danger of inconsistent obligations.

26

27 _____

28      [10] U.S. Patents 5,379,414 and 6,195,767.

United States District Court

For the Northern District of California

A necessary party is one "having an interest in the controversy, and who ought to be made [a] party, in order that the court may act on that rule which requires it to decide and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." This standard is met when failure to join will lead to separate and redundant actions.

*IBC Aviation Servs. v. Compania Mexicana De Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000). *See generally Shields v. Barrow*, 58 U.S. 130 (1854) (distinguishing between a "necessary" party and an "indispensable" party.). The Federal Circuit has held that "where . . . an exclusive license transfers less than 'all substantial rights' to the patents to the exclusive licensee, the exclusive licensee may still be permitted to bring suit against infringers, but the patent owner is an indispensable party who must be joined." *Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.,* 604 F. 3d 1354, 1359 (Fed. Cir. 2010). *Cf. Abbott Laboratories v. Diamedix Corp.*, 47 F. 3d 1128, 1133 (Fed. Cir. 1995) ("The right to sue for infringement is ordinarily an incident of legal title to the patent.").

The Court finds that Sony, as owner of the '414 and '767 patents, is an indispensable party. It has an interest in this suit challenging to the validity of these patents, and disposition herein may as a practical matter impair or impede its ability to protect that interest. It bears noting that there is no reason to believe that Sony's interests are adequately protected here. *See Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1272 (Fed. Cir. 1998) (citing *In re Allustiarte*, 786 F.2d 910, 919 (9th Cir. 1986) (discussing prejudice to absent patent holder in indispensability analysis under Rule 19(b)). The parties provide no indication that Defendants herein have retained enforcement authority or control with respect to Sony's patents.

Plaintiffs must therefore join Sony to the extent they seek relief with respect to the two patents now owned by Sony. *See Independent Wireless Telephone Co. v. Radio Corp. of America*, 269 U.S. 459, 468 (1926) (in a patent infringement suit brought by an exclusive licensee, "the presence of the owner of the patent as a party is indispensable . . . to give jurisdiction under the patent laws . . . ." to avoid multiple lawsuits and liabilities against the alleged infringer, and to ensure that a patent is not invalidated or held unenforceable without the patentee's participation).

1  *See also Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310, 1314 (Fed. Cir. 2005) (accord);

2  Opp'n at 6 n.4).

3       The Court accordingly **GRANTS** Defendants' motion to dismiss the complaint as to U.S.

4  Patents 5,379,414 and 6,195,767, for failure to join Sony, a necessary party.

5                          **III.   CONCLUSION**

6       For the reasons discussed above, the Court hereby **GRANTS** in part and **DENIES** in part

7  Defendants' Motion to Dismiss.  In particular, the Court dismisses without prejudice Plaintiffs'

8  claims for declaratory relief on infringement.  The Court also dismisses without prejudice Plaintiffs'

9  claim with respect to Patent Nos. 5,379,414 and 6,195,767 pursuant to Rule 12(b)(7).  The motion to

10  dismiss is otherwise **DENIED**.

11       Should Plaintiffs seek to amend the complaint to address the dismissed claims, they shall

12  have 30 days from the date of this order to file an amended complaint.

13       This order disposes of Docket No. 12.

14

15       IT IS SO ORDERED.

16

17  Dated:  April 28, 2011

18                                    _____
                                       EDWARD M. CHEN
19                                     United States Magistrate Judge

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

22