Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen

```
                                  )
 Wistron Corporation et al,       )
                                  )   No. C10-4458 EMC
                                  )
          Plaintiff,              )
      vs.                         )
                                  )
 Phillip M. Adams & Associates    )
 LLC,                             )
                                  )
          Defendant.              )
                                  )
```

San Francisco, California
Wednesday, June 15, 2011

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
RECORDING**

**APPEARANCES:**

For Plaintiff:

K&L Gates LLP
Four Embarcadero Center
Suite 1200
San Francisco, CA 94111
**BY:  HAROLD H. DAVIS, JR.
ATTORNEY AT LAW**

K&L Gates LLP
630 Hansen Way
Palo Alto, CA 94304
**BY:  JEFFREY MICHAEL RATINOFF
ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Transcribed By:       Stacy Wegner
                      Transcriber
                      smwtyping@yahoo.com
                      (859) 539-2802

**APPEARANCES:** **(Continued)**

For Defendant:
> Quinn Dumke LLC
> 2150 South 1300 East, Suite 500
> Salt Lake City, UT 84106
> **BY:**  **EZEKIEL R. DUMKE, IV**
> **ATTORNEY AT LAW**

Wednesday, June 15, 2011                                    2:01 p.m.

THE CLERK:  Calling case C10-4458, Wistron versus Phillip Adams.

Counsel, please state your name for the record.

MR. DAVIS:  Harold Davis for the Wistron entities (inaudible).

THE COURT:  All right.  Thank you, Mr. Davis.

MR. RATINOFF:  Jeffrey Ratinoff for the Wistron and AOpen entities.

THE COURT:  All right.  Thank you.

MR. DUMKE:  And Ezekiel Dumke for the Adams Defendant.

THE COURT:  All right.  Thank you, Mr. Dumke.

Well, I appreciate your working with us -- this slight detour we've had because of the closure of the building.  I'm glad we're able to still conduct this case management conference.

Let me ask sort of just to step back for a second. I -- I see that the second amended complaint has been filed, and it -- it -- it still seeks -- or to put at issue infringement, right?

MR. DAVIS:  Yes, Your Honor.

THE COURT:  And -- and the only product I see mentioned in here are -- is -- is the Wistron manufactured

Hewlett Packard G70 notebook computer.

MR. DAVIS:  That's correct, Your Honor.

THE COURT:  All right.  Is it anticipated that that will sort of be the -- the bellwether product or that -- that's going to be the lens through which we're going to view this -- the infringement actions, or are you expecting further amendments and other things to happen in that regard?

MR. DAVIS:  Your Honor, this is, again, Harold Davis.  I -- I -- I suspect that they're going to name additional products.  We understood on behalf of Wistron and AOpen entities that we needed to name at least one specific product in order to meet our obligations, and so we did that.

But my -- I don't want to speak for -- for Phillip M. Adams, but I -- I suspect that they're going to have additional products that they will probably view as more representative than that HP product.

THE COURT:  Okay.  Well, let me ask you then, Mr. Dumke, are you in a position to give us -- shed some light on that?

MR. DUMKE:  Well, Your Honor, as you're aware, the -- there is a license between the Phillip M. Adams Associates and HP, so you know, without hanging myself, I -- I'd be inclined to say that that is a product that would qualify as a -- not being infringing, due to the license with HP and that the -- it's likely that we'll be trying to identify

other products other than that -- outside of the HP family.

**THE COURT:** All right. So you anticipate -- are you anticipating filing then -- where -- where do we go from here? Is there going to be a counterclaim then alleging particular products or where are we going with this?

**MR. DUMKE:** Well, Your Honor, I -- I don't know if we're in a position at this point to say exactly what product we'll be identifying, due to some recent settlement, but products will be having to be identified shortly, as I understand under the local rule, to the extent that we can.

**THE COURT:** Well, what -- what is your -- does your client have a plan as -- right now as to how they're going to respond to the second amended complaint?

**MR. DUMKE:** Yes. The plan is to be doing a -- an answer and counterclaim, Your Honor.

**THE COURT:** Answer and counterclaim. Okay. So not another motion to dismiss -- or motion to dismiss?

**MR. DUMKE:** No. I -- we -- we -- we -- we took your encouragements, and we're going to --

**THE COURT:** Okay.

**MR. DUMKE:** -- continue forward in this jurisdiction.

**THE COURT:** All right. Then that will -- in the parties' view, that -- is that sufficient then to put the pleadings at issue to start the -- the process -- the

disclosure process, the infringement contentions, etcetera, etcetera?

**MR. DAVIS:** At least from -- from Wistron and AOpen's perspective, that's the case, Your Honor.

**THE COURT:** All right.

**MR. DUMKE:** And your -- Your Honor, I believe under the -- the timing, our answer and counterclaims is due -- I -- I may be corrected by counsel here -- I believe it's currently scheduled to be due tomorrow.

**THE COURT:** Oh.

**MR. DAVIS:** I think -- yeah, Your Honor --

**MR. DUMKE:** (Inaudible - - due to simultaneous colloquy.)

**MR. DAVIS:** Yeah. The -- the -- the wit -- the Defendants have requested an extension. We -- we have yet to work that out, but we anticipate working on an extension for them, so they'll probably be filing their answer and counterclaim in -- in two weeks' time.

**THE COURT:** Okay. All right. So I can assume that there will be an answer and counterclaim then two weeks, and then -- and that at that point we can put in some dates in terms of the infringement contentions and disclosures of invalidity contentions and the things that we need to do, at least leading up to claim construction.

**MR. DAVIS:** I --

**THE COURT:**  Is that a fair --

**MR. DAVIS:**  I believe that will be right, Your Honor.

**THE COURT:**  All right.  And I -- I am not -- obviously, I'm not going to set dates beyond that because I think we need to see where we're at once we get to -- to claims construction.  Trial dates with follow, and all the other stuff, once we get a claims construction.

So what I intend to do then is to assume that the answer will be filed in two weeks, and then I will set the dates accordingly, consistent with what you all have stipulated to, which I believe is consistent with the patent local rules for the various events that have to follow leading up to the actual claims construction hearing.

One thing we should talk about is when I look at M.I.C. (phonetic), there's a possible hundred -- what is it -- 150 claims that may be at issue here, and I don't know how many terms, but I -- I do have standing orders, and there is a limit to how many terms that -- that we're going to construe, at least in this first round.  And -- and so I'd like you to make sure you follow those standing orders and -- and prioritize and think -- maybe it's a little too early, but not -- in the not-too-distant future, start thinking about what are the top, for instance, 10 claims that really need to be dealt with here.  But I just -- I just wanted to

put a flag up on that.

MR. DAVIS:  All right.  Harold Davis, again, Your Honor.  Thank you for mentioning that.  The -- the one question I have about that is just preliminary looking at some of the asserted claims, there appear to be a number of means-plus-function claim elements.

In our understanding of the -- the current precedent is that those really have to be construed by the Court at some time.  You know, and that may -- I don't know if that counts toward our 10 or not and I know --

THE COURT:  Well --

MR. DAVIS:  Some judges have different opinions on that.

THE COURT:  I think the starting assumption is that yes, you know, because at the end of the day it's -- it's really a -- a -- a resource question -- a judicial resource question and --

MR. DAVIS:  Right.

THE COURT:  -- I understand that it's necessary, you can't avoid it, but, you know, that -- that's a starting point, yes.

MR. DAVIS:  Okay.

THE COURT:  All right.  Let's talk about ADR for a moment here in -- in terms of what your thoughts are.  You've indicated that the parties are agreeable to nonbinding

private mediation through JAMS.  Is that on an early basis before claims construction or what -- what's the timing that you're thinking of.

MR. DAVIS:  Your Honor, we -- I think we talked about sometime within the first 90 days here, relatively early on.  It would at least be Wistron and AOpen's idea that we would have -- we would at least have some -- a claim chart be asserted -- infringement contentions, at a minimum, before we conducted that mediation.

Now, the Defendants may want to wait until they get our invalidity contentions, but right now we're just not sure the scope of the allegations, what -- what patents they're going to assert, what claims they're going to assert, and what their infringement theories are.

So we -- we think we got to wait at least until we -- we get that from them, but then sometime after we get their infringement contentions and we can evaluate those is when we would hope to -- to conduct a -- a mediation.

THE COURT:  All right.  Mr. Dumke, what's -- what's your view?

MR. DUMKE:  Your Honor, we've -- we've -- from past litigations, we have some claims constructions that, you know, aside from changing to the products of the Plaintiffs, on two of the patents we still likely can put forth.  And we feel that once we put those two forward, it really will

address all of the products that would fall under the family of patents.

And I -- I think once we put this forward, I -- I just would hate to go through -- I mean, it's a little bit of the chicken and the egg, in my opinion, on creating charts for all 150 claims before we go to ADR, if we can put forth, you know, 10 to 15 claims to kind of give a -- an indication of what -- where -- what the exposure is.

THE COURT:  So your thought is to do kind of a -- a sampling or a smaller scale phase version of -- of contentions as a predicate to -- to mediation before doing the whole --

MR. DUMKE:  Exactly, Your Honor.

THE COURT:  And what's -- what's the Plaintiff's thoughts on that?

MR. DAVIS:  You know, I -- I -- my initial thoughts, just hearing it for the first time, is that, you know, they've asserted all these claims against us and, you know, the local rules seem to require them to -- whatever claims they're going to assert, they have to -- they have to do charts for and do their contentions for, and we'd like to -- we'd like to see them all, because what we'd hate to have to do is then make our arguments to these two or three patents that they give us.  And then they come back and say, "Well, you know, we also have a hundred more claims we can

assert against you," you know.

I mean, if this case is really about two or three representative patents, then I think they should just counterclaim on just those two or three asserted ones, and we'll agree to, you know, dismiss without prejudice the other ones, or -- or something to that nature and just have this case go forward on what they think are the -- the essential claims here, rather than put in at issue the 150 claims.

**MR. DUMKE:**  Your Honor, we would be -- we'd be comfortable with doing an evaluation and moving forward with that -- in that nature.

**THE COURT:**  Okay.  Well, that may affect then the -- the scope of your answer and counterclaim.  I -- it does appear to me that it takes two to tango, and if the parties -- either party is not sort of satisfied with the information it has before going into mediation, it doesn't make a whole lot of sense.  But it may be that, you know, if you know where -- where this is going, and this is the time to sort of pick and choose, this may be a good time to do that, rather than taking the expansive and costly road of litigation.

Why don't -- I'm going to leave it to you all to see if you can work out something in that regard, but that won't affect the timetable.  What I will do is -- is set this down for completion of mediation, once I chart out the timeframe here, sometime after the -- the invalidity and the

infringement charts are exchanged.

That sound about the right timing of that?

**MR. DUMKE**:  Yeah.  That sounds good to us, Your Honor.

**THE COURT**:  Yeah.  That's -- that's probably going to be about 90 days I -- is my guess.

**MR. DUMKE**:  That's probably about right.

**THE COURT**:  So you will contact JAMS, or whoever it is you're going to, because you're going through the private route, correct?

**MR. DUMKE**:  That's right.  We'll either, you know, try to come up with mediators, or we'll try to go through JAMS, whatever -- whatever we can talk about, we will discuss.

**THE COURT**:  All right.

**MR. DUMKE**:  Yeah.

**THE COURT**:  If at some point you decide you want to use the court sponsored process, let me know, but otherwise, I'm going to assume this is going through the private route, and so why don't we go ahead and do that.

So I will get out a scheduling order up through claims construction.  I will also build in some timeframe for the mediation to be completed.

And then what I'd like to do is get back together for further status sometime after the mediation is done.  I'm

assuming that will probably be about four months out.

Is that -- does that sound like a plan?

**MR. DUMKE:**  That sounds acceptable to us, Your Honor.

**MR. RATINOFF:**  That sounds good, Your Honor.

**THE COURT:**  Okay.  My courtroom deputy is tied up at the moment, so I'm going to get a date in a second, but let me ask you -- let's see.

Are there any other procedural matters that we need to be concerned with at this point that we should talk about today?

**MR. DAVIS:**  All right.  The only thing I want to mention, Your Honor, and this is on behalf of the -- the Plaintiffs here.  There's -- there's one that's sort of a housekeeping thing and one that's maybe a little bit more substantial.

The housekeeping thing is, is in the joint case management statement the Plaintiffs had indicated that there were some related parties to the Wistron entity and -- and there's a -- there's an error in that, and I -- I just want to have it on the record and I want to -- we'll also be filing an errata to this joint case management statement.

And it's that Wistron NeWeb is a subsidiary of Wistron, and that -- and that's an incorrect statement.  Wistron NeWeb is -- is not a subsidiary of Wistron.  And for

various reasons, that's -- that's important to us to -- to correct.

THE COURT:  Okay.

MR. DAVIS:  So I just wanted to -- to mention that.

And -- and then the other issue is, is that we had mentioned that the only sort of early motion that we anticipate is that -- I think that the Defendants are contemplating filing a -- perhaps a trade secret and unfair competition claim.

We don't believe that there's sufficient evidence that they have or -- or will be able to allege in order to satisfy their good faith obligations, and so if -- if -- we don't know what they're going to do because we haven't seen -- we saw a draft -- what appeared to be an answer, but if they're answer is similar to that, we think that we would have to tee up a very early motion to dismiss on that and -- and -- and possibly, you know, take it further if it -- if necessary, but just wanted to put that out there so the Court's aware of that.

THE COURT:  Okay.  All right.  Let me ask in terms of any early discovery that you think need -- need to be completed prior to mediation, is there anything that needs to be done in a formal way at this point, beyond the -- the early disclosures?

MR. RATINOFF:  Your Honor, it's Jeff Ratinoff for

Plaintiffs.  If they do end up asserting the trade secret claim and -- and they're able to somehow survive a Rule 12(b)(6) motion, then they would still be required to identify their trade secret, subject to 2019.210 of the California Code of Civil Procedure.

So to the extent that they want to do discovery on that claim, they're going to have to identify those trade secrets before doing so, so that -- well, I don't know if that -- if that will necessary affect the patent track, but that's certainly going to be a gatekeeper for them to conduct discovery on that particular claim.

THE COURT:  All right.  What about with respect to the -- the patent case itself, vis-a-vis the -- the JAMS mediation?  Will you be needing to do any deposition work or anything formal prior to that mediation?

MR. DAVIS:  You know, typically, Your Honor -- this is, again, Harold Davis -- the only thing that -- you know, a lot of times in these cases that we look at are -- are prior licenses.  You know, if -- if they're willing -- and -- and a lot of times we've found that the -- the patent holder is willing to show us those because it sometimes helps in the mediation to understand, you know, what licenses they've -- they've been able to extract and -- for -- for their intellectual property.

So we would -- I mean, we're going to ask them to

perform -- to -- to provide those to us on a attorney's eyes only basis or -- or some protected basis, but that would be helpful information for us to have prior to the mediation.

THE COURT:  Okay.

MR. DUMKE:  Your Honor, Ezekiel Dumke here.  For us, it would be beneficial.  You know, quite frankly, it's very hard for us to determine the full breadth of Wistron's manufacturing, so we're going to need identification of the product that they're manufacturing and the suppliers that they're using for the chip.

And -- and -- and that's going to benefit us a lot as to what we feel the exposure would be in helping us gauge what would be a reasonable outcome for both parties.

THE COURT:  So tell me what you're looking for more specifically from the Plaintiffs.

MR. DUMKE:  Well, it would -- it would be the customers that they're manufacturing for.  As Mr. Davis had identified, HP -- the G -- sorry -- the G20.  The in -- information out in the public realm as to what other machines are manufactured by Wistron for -- for -- for customers is somewhat of a black box, and we would need some additional information as to what other models are being manufactured.

THE COURT:  All right.  So both these sound like some -- either document requests or other forms of written discovery?

MR. DUMKE: Yes. As of depositions, I don't see the need in these early stages for any initial depositions.

THE COURT: All right.

MR. DUMKE: (Inaudible).

MR. DAVIS: Yeah. No. I'm in the same boat. I -- I -- you know, I think we can probably exchange some initial written discovery and see where we are before that, but I -- I don't foresee any early dep --

(Inaudible -- due to alarm sound)

THE COURT: Oops. Go ahead. Sorry.

MR. DAVIS: I hope that wasn't a get out quick --

THE COURT: Well --

MR. DAVIS: -- alarm for you.

THE COURT: -- we'll find out in a moment here.

UNIDENTIFIED SPEAKER: Your attention please. Your attention please. The situation has been resolved. All clear. All clear. Again, the situation has been resolved. All clear. All clear. The garage and subbasement are closed. Again, the garage and subbasement are closed. All other areas are clear.

MR. DUMKE: Your Honor, I hope it --

THE COURT: All right. See, you guys can all come back to court now.

MR. DAVIS: All right.

THE COURT: So you get a late breaking news as

quickly as we do.

MR. DAVIS:  Thank you, Your Honor.

THE COURT:  I -- I can breathe a little more comfortably here.

MR. DAVIS:  Good.

THE COURT:  All right.  So we're -- we'll anticipate some written discovery, but no formal depositions, at least prior to completion of mediation.

Betty, I need a date for a status conference, about --

THE CLERK:  How --

THE COURT:  -- 120 days out.

THE CLERK:  120 days?

THE COURT:  Yeah.

THE CLERK:  October 14th at 10:30.

THE COURT:  October 14th at 10:30 for further status.

THE CLERK:  And it will be in courtroom 5, 17th floor.

THE COURT:  All right.  Courtroom 5, 17th floor.

MR. DUMKE:  Your Honor, I'm sorry.  I actually have an *Asus* (phonetic) hearing scheduled for that day --

THE COURT:  Oh.

MR. DUMKE:  -- here in the northern district.

THE COURT:  Okay.  Let's --

THE CLERK:  How about at --

MR. DUMKE:  At -- no.  It's at 9:00 a.m.  I don't know if we --

THE COURT:  Well, let's -- let's do it -- you want to do the week before or the week after?

THE CLERK:  The seventh.

THE COURT:  The seventh.  How's the seventh?

MR. DUMKE:  The seventh works for me, Your Honor.

THE COURT:  Okay.  Is that good for everyone else?

MR. DAVIS:  Yeah.  We'll make it work, Your Honor.

THE COURT:  All right.  All right.  Then I will get out a scheduling order, at least for this first phase of the case, confirm that you're going to go to private mediation and -- and at least set the preliminary -- the early dates in this matter.  And obviously, if there are going to be motions, etcetera, let me know.

If there are discovery disputes, I do have a standing order that's a little different than my previous order.  It does require that the parties meet and confer and send me a very brief joint letter before we decide whether we take this to a full motion or just decide this on -- on a -- on a summary basis or what.  But I'm hoping that the parties will cooperate in that regard, and we won't have to go down that road on very many occasions, if at all.  All right?

MR. DAVIS:  All right.

20

**MR. DUMKE:**  All right, Your Honor.

**THE COURT:**  Great.  Then we will see you in October.

**MR. DUMKE:**  All right.  Thank you, Your Honor.

**MR. RATINOFF:**  Thank you, Your Honor.

**THE COURT:**  Thanks everyone.

(Proceedings adjourned at 2:22 p.m.)

**CERTIFICATE OF TRANSCRIBER**

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U. S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____  7/22/11

Signature of Transcriber      Date